## W. J. ALEXANDER V. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS.

Decided November 6, 1909.

**Damages—Injury by Fright—Agency—Question of Fact.**

A railroad company's special agent and detective accompanied by the company's station agent and his employee, went upon plaintiff's premises about midnight in search of evidence against plaintiff on a charge of theft of the company's property; the plaintiff was not at home and his wife discovering their presence on the premises was very much frightened and humiliated; said parties entered the premises without the consent of plaintiff or his wife and without legal process. In a suit by the husband against the company for damages resulting from the fright and humiliation of his wife, evidence considered, and held to raise the issue whether or not said detective and the others were acting within the scope of their authority in entering upon plaintiff's premises, and whether or not the shock and its injurious results were proximately caused by the acts of said parties, and whether or not such results ought to have been foreseen as a natural and probable consequence of said acts; and the court therefore erred in instructing a verdict for defendant.

Appeal from the District Court of Hill County. Tried below before Hon. W. C. Wear.

*Collin & Cummings* and *Morrow & Smithdeal,* for appellant.—The evidence showing that O. K. Wheeler, C. G. Denman and Roy Scar-

brough were employes of the appellee, and that it was the duty of O. K. Wheeler, and within the scope of his authority to investigate charges such as those which had been made against appellant, and further showing that on the night in question he and the said Denman and Scarbrough were acting for the appellee company, and while so acting injured appellant's wife, the court erred in instructing a verdict for the defendant. Texas & N. O. Ry. Co. v. Parsons, 113 S. W., 914; Galveston, H. & S. A. Ry. Co. v. Neel, 26 S. W., 788; Galveston, H. & S. A. Ry. Co. v. Donahoe, 56 Texas, 164; Missouri, K. & T. Ry. Co. v. Warner, 49 S. W., 254; Dillingham v. Russell, 73 Texas, 50; Gulf, C. & S. F. Ry. Co. v. Condor, 58 S. W., 58; Galveston, H. & S. A. Ry. Co. v. Masterson, 51 S. W., 1090; Texas & N. O. Ry. v. Taylor, 73 S. W., 1081; Texas & N. O. Ry. v. Parsons, 113 S. W., 914; Chicago City Ry. Co. v. McMahon, 42 Am. Rep., 29; Higgins v. Watervliet Turnpike Co., 7 Am. Rep., 293; Evansville & T. H. Ry. Co. v. McKee, 50 Am. Rep., 102; St. Louis, I. M. & S. Ry. Co. v. Grant, 88 S. W., 580 and 1133; Texas Midland Ry. Co. v. Dean, 82 S. W., 524; Texas & P. Ry. Co. v. Parker, 68 S. W., 831; Birmingham Waterworks v. Hubbard, 7 Am. St. Rep., 36; Daniel v. Petersburg R. R. Co., 4 L. R. A. (N. S.), 485; Stranahan v. Coit, 4 L. R. A. (N. S.), 506; Western & Atlantic Ry. Co. v. Turner, 53 Am. Rep., 842; Gulf, C. & S. F. Ry. Co. v. Hayter, 93 Texas, 242; 1 Thompson on Negligence, 155-6-7; 13 Cyc., p. 30.

*E. B. Perkins, D. Upthegrove* and *Scott, Sanford & Ross,* for appellee.—When the evidence fails to show affirmatively that the agent or servant in committing the act complained of was acting within the scope or apparent scope of his authority at the time he performs the act complained of, it is the duty of the court to instruct a verdict for the defendant. St. Louis S. W. Ry. Co. v. Wyatt, 105 S. W., 72; Galveston, H. & S. A. Ry. Co. v. Currie, 96 S. W., 1073; Texas & P. Ry. Co. v. Black, 87 Texas, 160.

Where the servant commits an act which in itself is illegal and injury results therefrom, the master will not be held liable therefor unless he either advised or participated therein or ratified the same. Dillingham v. Russell, 73 Texas, 54; International & G. N. Ry. Co. v. Cooper, 88 Texas, 607.

When the evidence fails to show affirmatively that the act complained of was the proximate cause of the injury, it is the duty of the court in such case to peremptorily charge the jury to find a verdict for the defendant, and the evidence in the case at bar failed to show affirmatively that the going upon the premises by the agents of the defendant (even if they were acting within the scope or apparent scope of their authority) was the proximate cause of injury to plaintiff's wife. Therefore the court properly charged the jury to bring a verdict for the defendant. Walton v. N. Y. C. S. C. Co., 2 N. E., 101 (Mass.); St. Louis S. W. Ry. Co. v. Wyatt, 105 S. W., 72; Galveston, H. & S. A. Ry. Co. v. Currie, 96 S. W., 1073; Dillingham v. Russell, 73 Texas, 54; Texas & P. Ry. v. Black, 87 Texas, 160; Lachat v. Lutz, 22 S. W., 218; International & G. N. Ry. Co. v. Cooper, 88 Texas, 607; Texas & P. Ry. v. Bigham, 90 Texas, 223; Gulf, C. & S. F. Ry.

Co. v. Hayter, 93 Texas, 239; Hendrix v. Texas & P. Ry., 89 S. W., 461; Lipscomb v. Express Co., 95 Texas, 5; Neiler v. Railway Co., 96 Texas, 34; Denison, B. & N. O. Ry. Co. v. Barry, 98 Texas, 250.

RAINEY, Chief Justice.—This is a suit instituted by W. J. Alexander, appellant, against the railway company, appellee, to recover damages for injury to his wife caused by the railway company's agents in going upon his premises in the night-time while he was absent, and in the discharge of their duty, and causing her fright and humiliation.

Defendant answered by general denial, and specially, that the acts of its servants in going upon plaintiff's premises were not in performance of any duty they owed defendant, but were beyond the scope of their authority.

A trial was had before a jury, and upon the conclusion of the evidence the court gave a peremptory instruction for the defendant, and thereupon verdict and judgment was rendered accordingly, from which this appeal is prosecuted.

The evidence tends to show that Alexander had been accused of taking property from the railway company. That O. K. Wheeler, the company's special agent and detective, whose duty it was to investigate and look up the evidence relative to said charge, procured C. G. Denman, the company's station agent at Hillsboro, and Roy Scarbrough, an employe under Denman, to assist him, and the three went to the residence of said Alexander in the city of Hillsboro at night, about eleven or twelve o'clock, to secure a piece of lumber it was charged Alexander had appropriated, as evidence to sustain said charge. Alexander was not at home at the time, which was known to said parties, but they knew Mrs. Alexander was at home. Said parties went into the yard and near the window of the room in which plaintiff's wife was at the time, and there was a street light shining across the yard which rendered it easy for plaintiff's wife to see the said parties.

Plaintiff's wife testified as follows: "I am acquainted with O. K. Wheeler. I understand that he is detective with the railway company of the defendant. I remember the occasion when some men, about the first day of May this year, at night, came into my yard one night. I remember the circumstances of their coming there. O. K. Wheeler called at my house a few days prior to that time, and then I gave him a statement, and in the conversation he drifted into chickens, and was telling much about Mr. McDonald's chickens, and he went out and called me and asked me if I would mind to show him the chickens. I told him I did not mind it. I did not think at the time he wanted me to show him chickens. He seemed apparently to be looking at lumber piled in the yard. That was in the daytime. He saw all of the piles of lumber that were there. He did not at that time mention the lumber at all. I told him that day that my husband was not at home. I did not say anything to him as to how long I expected my husband to be away from home. That was about a week before the men came there that night. I guess Mr. Wheeler was out in the yard about five or ten minutes when he came there around through my premises. He was in the house I guess thirty minutes or more. He did not say anything to me about the lumber on that occasion. About

a week after that somebody came to my house about midnight. It was Mr. Wheeler, C. G. Denman and Scarbrough. I mean O. K. Wheeler, the detective of the company, and Denman, the local agent of the defendant, and Mr. Scarbrough, who was in the employ of the defendant at that time. That was about twelve o'clock at night that they came there. When I first saw them on my premises they were crossing to the south side. I did not recognize them when I first saw them. I was lying on the bed. I got up to the window, thinking I would get my pistol, and when I got to the window I recognized Mr. Wheeler first, and Mr. Scarbrough and Mr. Denman. The light shone across the yard, and just as they passed I recognized them, and that is when I got so frightened. I fainted. I don't know how long I was in that condition. Nobody was with me but Mr. Gibson and my little son, who was in the next room. No one at all was in the room with me. I don't know how long I remained in that condition, but it was day before I could remember anything, and as soon as I could I got up and went out to see. All three of them were in my yard. I became so frightened. I did not know what they were up to. I heard Mr. Alexander speak that they were trying to get some evidence against him, and the thoughts of it frightened me. It seems like my heart gave down on me and I fell and fainted away, and I remained in that condition I don't know how long. I have never seen a well day since that time. At times I have been able, and have tried to get out, and walked out several times. Dr. Buie advised me to walk up to his office several times. I went to Waco and stayed a while, and rode out several times while there, and I walked out every chance that I felt like going. I have been to Hubbard City and to Sulphur, Oklahoma, but the spells continue to come on me and I grow weaker all the time. My nerves draw very badly. It seems like every nerve in my body draws, and finally my heart becomes weak and I feel it failing out, and I become perfectly unconscious. I have since that time suffered with the drawing of my nerves. They just draw; every nerve in my body seems to draw at times. The fact that I saw these men there at that particular hour of the night, and the fact that I heard what they had charged my husband with, had the effect on me mentally to produce a very disagreeable feeling of mind. No one would know what it was unless they would pass through it. Since that time I have not been able to perform my household duties. I did all my work except my washing up to that time."

Said parties went upon said premises without the consent of plaintiff or his wife, nor were they possessed of any legal process authorizing such invasion.

Such being the evidence, was it error in the court to instruct a verdict? We think so. On the proposition of appellee that said parties were not acting within the scope of their authority, we think the issue was raised, and should have been submitted to the jury. The evidence shows a trespass on the part of said parties, and there is no evidence showing the company authorized the commission of a trespass, but corporations are responsible for damages resulting from torts committed by agents while in the performance of a duty for which they have been employed. It should have been left to the jury to determine

whether or not the said parties were acting within the line of their duty in hunting up evidence to sustain the charge against Alexander.

The other proposition made by appellee is, in effect, that the injury, if any, was not the result of fright from fear of bodily injury, but from humiliation at the fact that the parties were in the premises searching for evidence to sustain the charge of theft against her husband. Our courts have held that an action will lie for bodily injury resulting from fright caused by the wrongful act of another. (Hill v. Kimball, 76 Texas, 210; Gulf, C. & S. F. Ry. v. Hayter, 93 Texas, 239, and authorities there cited.) In the case last cited, Judge Gaines, speaking for the court, says: "We conclude when a physical injury results from a fright or other mental shock, caused by the wrongful act or omission of another, the injured party is entitled to recover his damages, provided the act or omission is the proximate cause of the injury, and the injury ought, in the light of all the circumstances, to have been foreseen as a natural and probable consequence thereof. In our opinion, as a general rule, these questions should be left to the determination of the jury." So in this case, under all the circumstances shown by the evidence, it should have been left to the jury to determine whether or not the shock and results, as claimed by appellant's wife, were proximately caused by the acts of the parties, and whether or not the injury ought to have been foreseen as a natural and probable consequence of such acts.

It is the province of the jury to determine all questions of fact, and unless the evidence is so conclusively one way that there is no room for reasonable minds to differ as to the conclusion to be reached, the trial judge should not direct a verdict.

For the error in directing a verdict, the judgment is reversed and cause remanded for a new trial.

*Reversed and remanded.*